UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: ) | | Chapter 7 |
| Freedom Development Group LLC – 87th Street ) ) ) | | |
| Debtor. ) ) | | Bankruptcy No 20-15619 |
| _____ ) ) | | |
| Karen R Goodman, not individually but as Chapter 7 trustee for Freedom Development Group LLC – 87th Street, ) ) ) ) | | Honorable Judge Donald R. Cassling |
| Plaintiff, ) ) | | |
| v. ) ) | | |
| John Thomas, Daniel Olswang, Freedom Development Group LLC, Freedom Development Group LLC – Aurora, Freedom Development Group LLC – Elgin Hospital, Freedom Development Group LLC – North Avenue, Freedom Development Group LLC – Pittsfield, Freedom Development Group LLC – Round Lake, Freedom Development Group LLC – Starved Rock Marina, Freedom Development Group, LLC – Waukegan, 901 Center Street Holdings, JET Foods LLC, and John Does with bank account numbers ending in 0253, 0262, 0280, 0412, 8781, 9332, 1473, and all other dummy or sham corporations created or used by, or for the benefit of the Individual Defendants, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | | Adversary No. 21-00199 |
| Defendants. ) | | |

**NOTICE OF MOTION**

TO:  ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on **the 26th day of September, 2023 at the hour of 10:00 a.m.,** or as soon thereafter as counsel can be heard, I shall appear before the Honorable Donald R. Cassling, or before any other Judge who may be sitting in Judge Cassling's place, **either** in

courtroom 619 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn, Chicago, Illinois 60604, **or** electronically as described below, and present **Trustee's Motion for Partial Summary Judgment Against Defendant John Thomas,** a copy of which Motion is hereby attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet,** go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone,** call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 161 414 7941, and the passcode is 619. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**To reach Judge Cassling's web page** go to www.ilnb.uscourts.gov and click on the tab for Judges.

**If you object to this motion** and want it called on the presentment date above, you may file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, **the Court may grant the motion in advance without calling it.**

          Karen R. Goodman, not individually, but solely in her capacity as Chapter 7 Trustee for the estate of Freedom Development Group LLC – 87th Street., Plaintiff,

          By: /s/Scott R. Clar
               One of her attorneys

Scott R. Clar
(Atty. No. 06183741)
Crane, Simon, Clar & Goodman
135 S. LaSalle Street, Suite 3950
Chicago, IL 60603
312-641-6777
sclar@cranesimon.com

2

## **CERTIFICATE OF SERVICE**

      I, Scott R. Clar, certify that I served a copy of the Notice of Motion and the attached Motion on each entity shown on the attached list at the address shown and by the method indicated on the list on September 18, 2023, before the hour of 5:00 p.m.

                                          /s/Scott R. Clar

## **Service List**

*Served electronically:*
United States Trustee
USTPRegion11.ES.ECF@usdoj.gov

Gregory J Jordan
Jordan & Zito LLC
Email: gjordan@jz-llc.com

Jeffrey L. Gansberg
 jeffrey.l.gansberg@usdoj.gov

John Thomas
jet@fdg7.com

Christopher Hansen
hansenlegal@yahoo.com

Jacob Sellers
jacob@greensteinsellers.com

Neil Gantz
neilgantz@yahoo.com

Robert Knabe
rknabe@kkbchicago.com

*Served Via First Class U.S. Mail:*

| | |
|---|---|
| John Thomas | John Thomas |
| 111 S. Morgan Street | Freedom Development Group |
| Apt. 906 | 910 W Van Buren |
| Chicago, IL 60607-2736 | Suite 500 |
| | Chicago, IL 60607 |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| Freedom Development Group LLC – 87th Street, | |
| Debtor. | Bankruptcy No 20-15619 |
| Karen R Goodman, not individually but as Chapter 7 trustee for Freedom Development Group LLC – 87th Street, | |
| | Honorable Judge Donald R. Cassling |
| Plaintiff, | |
| v. | |
| John Thomas, *et al.*, | Adversary No. 21-00199 |
| Defendants. | |

**COMBINED MOTION AND MEMORANDUM OF LAW OF TRUSTEE FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT JOHN THOMAS**

The Plaintiff, Karen R. Goodman, not individually, but as Chapter 7 Trustee ("Plaintiff" or "Trustee") for the estate of Freedom Development Group LLC – 87th Street ("Debtor"), brings this Combined Motion and Memorandum of Law for Partial Summary Judgment in the above-captioned adversary proceeding against Defendant, John Thomas, seeking an accounting and/or the recovery of damages caused by his breach of fiduciary duty, and avoidance of fraudulent transfers, pursuant to 11 U.S.C. §§ 105, 548 and Fed. R. Bankr. P. 7056.

**INTRODUCTION**

On August 14, 2020 ("Petition Date"), the Debtor commenced the above-captioned bankruptcy case by filing a voluntary petition seeking relief under Subchapter V of Chapter 11 of the Bankruptcy Code. (Bk.Dk. #1) (SM at 1)[1]  On October 27, 2020, this Court entered an order

---
[1] The Statement of Uncontested Material Facts, filed contemporaneously with this Combined Motion and Memorandum is referenced as "SM," the docket for this adversary case is refenced as "Adv.Dk." and the docket for this bankruptcy case is referenced as "Bk.Dk."

1

converting the case to a Chapter 7 case (Bk.Dk. #72), and the Trustee was appointed shortly thereafter. (SM at 2)

The Debtor is an Illinois limited liability company which was in the business of leasing and operating a business plaza located at 163-205 W. 87th Street, Chicago Illinois ("Property"). (SM at 3) The Debtor identified in its schedules Prescient Capital Partners ("Prescient") as its largest secured creditor with a claim of $4,300,00.00 and Silver Development Co. ("Silver") as its largest unsecured creditor with a claim of $466,560.00. (SM at 4) The Debtor's sole asset is a leasehold interest in the Property. The Debtor's leasehold interest was created by a Ground Lease dated May 2005, which Ground Lease was assigned to the Debtor, as lessee, on or about November 20, 2018. Silver is the holder of a fee title in the Property. (SM at 5)

The Defendant, Freedom Development Group LLC, is the master LLC to the Debtor ("Master LLC"), and at least seven other subsidiary companies including (A) Freedom Development Group, LLC – Aurora, (B) Freedom Development Group, LLC – Elgin Hospital, (C) Freedom Development Group – North Avenue, (D) Freedom Development Group – Pittsfield, (E) Freedom Development Group LLC – Round Lake, (F) Freedom Development Group LLC - Starved Rock Marina, (G) Freedom Development Group, LLC – Waukegan (collectively, "Related Entities"). All of the Related Entities have the same principal office, located at 910 W. Van Buren, Suite 500, Chicago Illinois. (SM at 6)

Daniel Olswang ("Olswang") and John Thomas ("Thomas") (collectively, "Individual Defendants") are the sole members and managers of the Debtor. Olswang holds a one-third membership interest in the Debtor and is the registered agent of all the Related Entities. Thomas holds a two-thirds membership interest in the Debtor. (SM at 7)

2

The Trustee believes that Thomas and Olswang also own, manage, and control other entities, including a vacant hospital campus in Elgin, Illinois under the name of 901 Center Street Holdings LLC and several grocery stores in the Chicago area under the name of JET Foods LLC (collectively, "Principals' Entities"). All of the Principals' Entities have the same principal office, located at 910 W. Van Buren, Suite 500, Chicago, Illinois.  (SM at 7)

This adversary proceeding arises in the Chapter 7 case of the Debtor.  On September 28. 2021, the Trustee filed a Complaint (Adv.Dk. #1) in the above-captioned adversary case, and on June 13, 2022, she filed an Amended Complaint. (Adv.Dk. #72) On August 15, 2022, Thomas filed an Answer to the Amended Complaint, in which Thomas asserted his rights under the Fifth Amendment to the United States Constitution to every allegation contained in the Amended Complaint.  (Adv.Dk. #75)

## JURISDICTION AND VENUE

Pursuant to 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over this proceeding, as referred pursuant to 28 U.S.C. § 157(b) and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois.  This Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. §§ 1408 and 1409.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), and this Court has constitutional authority to enter final judgments and orders herein.  If a court determines that any portion of this proceeding is not a core proceeding or that a bankruptcy judge does not have constitutional authority to enter final judgments in this proceeding, the Trustee consents, pursuant to 28 U.S.C. § 157(c), to a bankruptcy judge hearing and finally determining the proceeding and entering appropriate orders and judgments.

**BACKGROUND**

On September 1, 2020, this Court granted Debtor's first motion to use cash collateral ("First Order"). (Bk.Dk. #29) Under the terms of the First Order, the Debtor was allowed to use cash collateral, consisting of rent collections, to pay only expenses identified in the budget attached to the Debtor's motion. The First Order's budget showed a gross projected revenue of $147,198.25. (SM at 8)

On September 30, 2020, this Court entered a second cash collateral order pursuant to the Debtor's motion to use cash collateral, ("Second Order"). (Bk.Dk. #47) Under the terms of the Second Order, the Debtor was allowed to use cash collateral to pay only expenses identified in the budget attached to the Debtor's motion. As with the First Order the budget projected gross revenue of $147,198.25. (SM at 9).

On November 12, 2020, the Debtor filed its Statement of Financial Affairs ("SOFA"). (Bk.Dk. #78) The Debtor's SOFA showed a substantial amount of money transferred to the Individual Defendants within one year prior to the filing of the bankruptcy case. (SM at 10)

The meeting of creditors pursuant to Section 341 of the Bankruptcy Code took place on December 16, 2020. During the meeting of creditors, the Debtor's representative, Olswang, stated that instead of paying expenses identified in the budget of the First and Second Orders, they were instead, "trying to keep our other projects going." (SM at 11)

On December 22, 2020, the Court granted Prescient and Silver's Joint Motion for Relief from Stay ("Joint Motion"). (Bk.Dk. #82) The following allegations were included in the Joint Motion: (1) that the Debtor failed to pay post-petition September 2020 rent budgeted in both the First and Second Orders; (2) that the Debtor failed to pay the required October adequate

4

protection payment outlined in the Second Order; and (3) that the secured debt was considerably under-collateralized. (SM at 12)

According to the Joint Motion, on April 16, 2020, Prescient sought appointment as mortgagee-in-possession over the Property in the state court action preceding this case. Based on a review of all of the Debtor's leases for the Property, the Debtor collected $1,147,330.00 from its tenants on account of monthly rents, CAM charges, tax charges and insurance charges from July 2019 through April 2020. Despite that collection, of which $345,735.00 was collected from the tenants specifically to pay annual real estate taxes, Debtor failed to pay real estate taxes due on the Property, monthly rent to Silver or any monthly loan payments to Prescient. All the rents generated from the Property from July 2019 through April 2020 ($1,147,330.00) simply disappeared. (SM at 13)

On January 12, 2021 and on January 26, 2021, the Trustee sought and was granted authority to take examinations of the Debtor and the Individual Defendants, respectively, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. (Bk.Dk. #100 and #105) (SM at 14) The Trustee's counsel examined Olswang and Thomas, both of whom invoked their rights under the Fifth Amendment to the United States Constitution to each and every question asked. (SM at 15)

The Trustee believes that the invocation of the Fifth Amendment was an attempt to insulate Olswang and Thomas from civil and criminal liability arising from their participation in a scheme designed to strip the Debtor of its income in order to finance the Debtor's Related Entities and the Principals' Entities and to provide income to themselves. As a result of this scheme, the Debtor was left with substantial debts to creditors and deprived of any assets to satisfy those claims.

5

The Trustee, through discovery, has received documents including bank statements, cancelled checks, the balance sheet, and the ledger indicating that before and after the Petition Date, funds of the Debtor were used to pay expenses of the Related Entities and the Principals' Entities. (SM at 16)  The Debtor's Schedules state that the Debtor had at least three bank accounts in its name: account number ending in 0058 at Fifth Third Bank with; account number ending in 8892 at Grand Ridge Bank; and account number ending in 9530 at Belmont Bank and Trust. (Bk.Dk. #24) (SM at 17) The account at Fifth Third Bank reflected deposits in the estimated amount of $2,931,555.25 and withdrawals of $2,727,898.15 during the two years prior to the Petition Date.  (SM at 18)

Deposited funds were transferred out of the Debtor's account virtually instantaneously after each of the deposits were made. Of the $2,727,898.15 in withdrawals, at least approximately $2,000,000.00 were direct transfers to account numbers corresponding to accounts maintained by the Related Entities and the Principals' Entities. (SM at 18) An identical pattern of activity occurred during the 2019- 2021 period with respect to its Grand Ridge National Bank and its Belmont Bank and Trust.  Thomas alone received approximately $330,300.00 from those accounts within one year of the Petition Date as stated in the SOFA. (Bk.Dk. #78) (SM at 19)

The Master LLC received a large portion of cash proceeds through electronic transfers and checks within two years prior to the Petition Date.  According to the limited documentation obtained by the Trustee, during that time period, the Individual Defendants caused the Debtor to transfer funds of approximately $1,819,903.96 to the Master LLC as part of the scheme to defraud the Debtor's creditors.  (SM at 20)  According to the limited documentation obtained by the Trustee, the Master LLC had at least eight bank accounts in its name: five accounts at Fifth

6

Third Bank with account numbers ending in 5059, 6448, 6814,7497 and 7505; an account at Grand Ridge Bank with account number ending in 0247; an account at Inland Bank with account number ending in 4996 and an account at PNC Bank with account number ending in 9808. (SM at 21)

Additionally, there were significant transfers made regularly to certain unknown account numbers, wires, and checks for which the Trustee has no statements or information to account for. According to the documentation obtained by the Trustee, those unknown accounts, specifically bank accounts with digits ending in 0253, 0262, 0280, 0412, 8781, 9332, and 1473, were/are maintained by the Related Entities, the Principals' Entities or the Individual Defendants. (SM at 22)

Thomas and Olswang breached their fiduciary duties to the Debtor and its creditors both pre-petition and post-petition, by causing the Debtor to fraudulently transfer an estimated $2.8 million from the accounts of the Debtor to themselves, the Related Entities, and the Principals' Entities. The Individual Defendants used the Debtor as a "cash cow" for the purpose of supporting the Related Entities. the Principals' Entities and themselves.

## LEGAL STANDARDS

"Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Winsley v. Cook Cnty.,* 563 F.3d 598, 602–03 (7th Cir.2009). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catlett,* 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the non-movant bears the burden of proof at trial. *Id*. The non-movant may not

7

rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; he must go beyond the pleadings and support his contentions with proper documentary evidence. *Id.*" *1756 W. Lake Street, LLC v. American Chartered Bank*, 2014 WL 5073354 at *3 (N.D.Ill. 2014).

Furthermore, as recognized, in *Clancy v. Coyne*, 244 F.Supp.2d 894, 899 (N.D.Ill. 2002), quoting the Seventh Circuit Court of Appeals decision in *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387 (7th Cir. 1995), where, as here, the non-movant has invoked his rights under the Fifth Amendment to the United States Constitution:

> …a moving party must introduce actual evidence that the elements of its case exist and cannot rest solely on the negative inference associated with the assertion of the Fifth Amendment privilege. *Id.* "Silence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden." *Id.* The reasoning behind the holding was that "the Supreme Court has prohibited practices that are coercive in that they make the exercise of the [Fifth Amendment] privilege 'costly.'" *Id.* at 389 (citations omitted).

In this case the uncontroverted evidence overwhelmingly supports a finding that Thomas breached fiduciary duties to the Debtor, its creditors, and its bankruptcy estate**.**

## **BREACH OF FIDUCIARY DUTY**

Thomas breached his fiduciary duties pre-petition and post-petition. Those duties were owed to the Debtor and its creditors, and upon the Chapter 11 filing, to the bankruptcy estate.

The law in Illinois is clear. Principals of a company have fiduciary duties to that company, which include the duties of loyalty and good faith. As recognized in *In re Central Illinois Energy Cooperative*, 561 B.R. 699, 705-706 (Bkrtcy.C.D.Ill. 2016):

> …[it] is well-established in Illinois, that directors and officers of a corporation occupy a fiduciary relation toward it. *Shlensky v. South Parkway Building Corp.*, 19 Ill.2d 268, 278, 166 N.E.2d 793 (1960). They are effectively charged with being trustees of the corporation's business and property for the benefit of the shareholders. *Dixmoor Golf Club, Inc. v. Evans*, 325 Ill. 612, 616, 156 N.E. 785 (1927). The fiduciary duties include duties of loyalty and good faith. *Patient Care Services, S.C. v. Segal*, 32 Ill.App.3d 1021, 1029, 337 N.E.2d 471 (Ill. App. 1 Dist. 1975); *Maercker Point Villas Condominium Ass'n v. Szymski*, 275 Ill.App.3d

8

>481,484, 211 Ill.Dec. 809, 655 N.E.2d 1192 (Ill. App. 2 Dist. 1995). In addition to their fiduciary duties of loyalty and good faith owed to the corporation and its shareholders, directors must exercise in the management of corporate affairs the degree of care that prudent persons, prompted by self-interest, would exercise in the management of their own affairs. *Stamp v. Touche Ross & Co.*, 263 Ill.App.3d 1010, 1015, 201 Ill.Dec. 184, 636 N.E.2d 616 (Ill. App. 1st Dist. 1993).
>
>A cause of action against a director or officer for damages suffered by a corporation caused by a breach of a fiduciary duty is typically brought as a shareholder derivative action. A derivative action is brought by a nominal plaintiff on behalf of a corporation to seek relief for injuries done to the corporation. *Caulfield v. Packer Group, Inc.*, 2016 IL App (1st) 151558, 404 Ill.Dec. 525, 56 N.E.3d 509, 517; *Hale v. Chu*, 614 F.3d 741, n.1 (7th Cir. 2010). Once the corporation enters bankruptcy, however, any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and directors become property of the estate and the right to bring a derivative action asserting such claims vests exclusively in the trustee. *Seidel v. Byron*, 405 B.R. 277, 287–88 (N.D.Ill. 2009); *In re Think3, Inc.*, 529 B.R. 147, 187 (Bankr. W.D.Tex. 2015); *In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006).

Upon insolvency the principals of a company, in effect, become trustees of that company with fiduciary duties to creditors. "[T]he moment a corporation becomes insolvent its directors occupy a different relation. The assets of the corporation must then be regarded as a trust fund for the payment of all its creditors, and the directors occupy the position of trustees, and a fiduciary relation then existing, they may with propriety be prohibited from purchasing the trust property." *Fisher Tool Co., Inc. v. Stampede Tool Co.,* 2014 WL 2932168 at *3 (N.D.Ill. 2014), quoting *Beach v. Miller*, 22 N.E. 464, 466 (Ill.1889).

Furthermore, these fiduciary duties extend to member/managers of Illinois limited liability companies, especially where, as here, the member (Thomas) has majority control of the LLC. For example, see *United Central Bank v. Desai*, 2014 WL 238756 at *2 (N.D.Ill. 2014). ("The Illinois Limited Liability Company Act ("LLC Act"), 805 ILCS § 180/15–1 *et seq.,* provides that a member-manager … owes fiduciary duties of loyalty and care to the LLC and its other members. 805 ILCS § 180/15–3(a); *see also id.* at § 180/15–3(b) (setting forth

9

member-manager's specific duties). A LLC's operating agreement may not "eliminate or reduce a member's fiduciary duties." *Id.* at § 180/15–5(b)(6)."). See also *Mitchell v. 3 Point Athletics LLC*, 2022 WL 846536 at *4 (N.D.Ill 2022). (Under corporate law principles, directors and officers may owe fiduciary duties to creditors in certain circumstances, such as when a corporation becomes insolvent. *See Atkinson Candies*, 529 F.3d at 384. This rule arises because once a corporation becomes insolvent, "the assets of the corporation must then be regarded as a trust fund for the payment of all its creditors and the directors occupy the position of trustees and fiduciaries." *Technic Eng'g, Ltd. v. Basic Envirotech, Inc.*, 53 F. Supp. 2d 1007, 1011 (N.D. Ill. 1999) (quoting *Coleman v. Howe*, 39 N.E. 725, 727 (Ill. 1895)). Although 3 Point is a limited liability company, this corporate law principle is "fully applicable to managers of insolvent limited liability companies." *In re McCook Metals, LLC*, 319 B.R. 570, 595 (Bankr. N.D. Ill. 2005) (citing *Anest v. Audino*, 773 N.E.2d 202, 209 (Ill. 2002) (holding that fiduciary duties of a corporate shareholder are owed by members of an Illinois limited liability company).

Debtor's leasehold interest is encumbered by Prescient's allowed secured claim in the amount of $4,903,103.37. (Claim No. 6). The Debtor valued its leasehold interest in the Property at $4,500,000.00. (Bk.Dk # 24)  As stated in the Joint Motion, the Debtor's valuation of its leasehold interest is wrong as it is based on the value of fee title to the land leased under the Ground Lease (which the Debtor does not own) and not the leasehold interest created by that lease, the only interest held by the Debtor in the Property. (SM at 23)

As stated in the Joint Motion, valuation of a leasehold interest is typically equal to the present value of the difference between the current market rental rates and the contract rents in accordance with the lease terms over the lease term. According to the budgets filed by the Debtor

10

in connection with its cash collateral motions (Bk.Dk. #20 & #41), the Property generates gross income of $147,198.25 with expenses of $137,802.28 resulting in net monthly operating income of $9,395.57.  As stated in the Joint Motion, when factoring in the total monthly debt service owed to Prescient (Debtor's budget only accounted for an adequate protection payment to Prescient equal to approximately 15% of monthly debt service), the Property's expenses significantly outweigh its monthly revenue making the Debtor's $4,500,000.00 valuation of its leasehold interest inappropriate.  As stated in the Joint Motion, applying a proper valuation method (net operating income/present value), the Debtor's leasehold interest is at best worth $1,127,468.40 ($9,395.57 X 10 years (remaining lease term as of the Petition Date)) and realistically valueless. (SM at 24)

The Debtor was undeniably insolvent, at a minimum, from the moment it entered into the loan agreement with Prescient on June 27, 2019, through and including the Petition Date, which insolvency was exacerbated by the breach of fiduciary duty owed by the Debtor to its pre-petition creditors. That breach was caused by the fraudulent scheme of Thomas and Olswang.

A Chapter 11 debtor owes a fiduciary duty to its creditors and its estate.  As noted in *In re Schipper*, 109 B.R. 832, 835 (Bkrtcy.N.D.Ill. 1989):

> Most] courts] recognize, though, that a Chapter 11 debtor is a fiduciary of his creditors and the estate. *In re Telemark Management Co., Inc.,* 41 B.R. 501 (Bankr.W.D.Wis.1984). A debtor-in-possession holds its powers in trust for the benefit of the creditors and has the duty to protect and conserve property in his possession for their benefit. *In re Modern Office Supply, Inc.,* 28 B.R. 943 (Bankr.W.D.Okla.1983), *In re Devers,* 759 F.2d 751 (9th Cir.1985)**.**

Under Section 363(c)(2) of the United States Bankruptcy Code, a debtor and its principals are absolutely prohibited from spending cash collateral without the consent of all parties that have an interest in the collateral, or a court order.  The Individual Defendants, without consent, used the funds collected and deposited post-petition and earmarked to be used

11

for the Debtor's expenses under the First and Second Orders for their own benefit, and to pay obligations of the Related Entities and the Principals' Entities. (SM at 25)

The Debtor's funds were siphoned by the Individual Defendants, both pre-petition and post-petition, to enrich themselves and to cover debts of the Related Entities and Principals' Entities. Those funds have not been accounted for or turned over to the Trustee. As a proximate result of the breach of fiduciary duty described herein, the amount the Debtor's creditors can collect from the Debtor has been drastically reduced.

## REQUEST FOR AN ACCOUNTING AND/OR A MONEY JUDGMENT

Although the Bankruptcy Court "has the power to order accounting *sua sponte* under section 105 of the Bankruptcy Code," (*In re TS Employment, Inc.*, 597 B.R. 494 at fn. 4 (Bkrtcy.S.D.N.Y. 2019)), Count I of the Amended Complaint specifically requested an accounting from Thomas. The party seeking an accounting must show: "1) breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts that are of a complex nature." *In re General Search.Com.,* 322 B.R. 836 at fn. 7 (Bkrtcy.N.D.Ill 2005), citing *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.,* 353 F.3d 541, 545 (7th Cir.2003). "**Although equitable remedies are denied when there is an adequate remedy at law, there is an exception for when an accounting action is sought based upon a breach of a fiduciary duty so that a plaintiff may proceed with the action**." *Moglia v. Pasquinelli*, 2018 WL 11363188 at *7 (N.D.Ill. 2018). citing *Mann v. Kemper Fin. Companies, Inc.*, 618 N.E.2d 317, 327 (Ill. App. Ct. 1992); and *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003). (emphasis added).

Thomas used his position with the Debtor in an obvious attempt to line his own pockets and to fund other entities he owned and controlled with Olswang. Thomas and Olswang

intentionally ignored and violated orders of this Court in so doing. By invoking the Fifth Amendment they have hamstrung the tracing of estate funds by the Trustee. Judgment should be entered in favor of the Trustee and against Thomas in an amount not less than $2,000,000 to be adjusted upward based upon an accounting which he should be directed to furnish to the Trustee.

WHEREFORE, the Trustee requests that this Court enter partial summary judgment with respect to Counts I and II of the Amended Complaint, for the breaches of fiduciary duty caused by Thomas, in her favor and against Thomas in the minimum amount of $2,000.000, plus interest from the date of each improper transfer at the maximum legal rate, costs, and expenses of this action including, without limitation, attorneys' fees, costs, and punitive damages, and/or directing and requiring Thomas to provide a complete accounting of the money transferred or diverted from the Debtor to himself, Olswang, the Related Entities, the Principals' Entities or any other parties, since the Debtor came into existence to the present date, and granting any additional relief that is appropriate under the circumstances.

## **AVOIDANCE OF FRAUDULENT TRANSFERS**

Section 548 of the Bankruptcy Code provides in relevant part as follows:

> **(a)(1)** The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
>> **(A)** made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>
>>> **(B)(i)** received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>>
>>> **(ii)(I)** was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

13

>> **(II)** was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> **(III)** intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> **(IV)** made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

As recognized in *In re Anderson*, 2020 WL 4463055 at *4 (Bkrtcy.E.D.Wisc. 2020):

> Because rarely is there direct evidence of a debtor's intent underlying a transfer of property, a trustee may be able to prove actual intent through circumstantial evidence, circumstances which are referred to as "badges of fraud." *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 721 (Bankr. N.D.Ill. 2006) (citing *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002)). These "badges" include:
>
>> 1. Lack or inadequacy of consideration for the property transferred;
>> 2. Existence of a family relationship between the transferor and transferee;
>> 3. The transferor's retention of possession, control, benefits or use of the property;
>> 4. The financial condition of the transferor both before and after the transfer occurred;
>> 5. Existence or cumulative effect of a pattern or series of transactions or course of conduct at the onset of financial difficulties, or pendency or threat of suits by creditors; and
>> 6. The general chronology and the timing of the transfers in question.

*Layng v. Pansier (In re Pansier)*, 613 B.R. 119, 148 (Bankr. E.D. Wis. 2020) (citing *Kellogg-Citizens Nat'l Bank v. DeBruin (In re DeBruin)*, 144 B.R. 90, 92 (Bankr. E.D. Wis. 1992)).

Thomas received the approximate sum of $330,300.00 from the Debtor, within one year prior to the Petition Date, when the Debtor was insolvent. There is no evidence that during that time he provided any value at all to the Debtor's business. He was a manager and held a two-thirds membership interest in the Debtor. He caused the Debtor to violate, at a minimum, two cash collateral orders by diverting funds from the Debtor, leaving the Debtor with insufficient funds to reorganize. He has invoked his Fifth Amendment rights throughout this case. Most importantly, Olswang, the one-third member of the Debtor admitted at the Section 341 meeting

14

of creditors that funds of the Debtor were diverted as they were "trying to keep our other projects going." Thomas intended to commit actual fraud and, at the very least, committed constructive fraud, in obtaining those funds, as contemplated by Section 548 of the Bankruptcy Code.

WHEREFORE, the Trustee requests that this Court enter partial summary judgment with respect to Count III of the Amended Complaint, finding that Thomas obtained from the Debtor the sum of approximately $330,300.00, at a minimum, by actual and/or constructive fraud as contemplated by Section 348 of the Bankruptcy Code, avoiding such transfers, and awarding judgment in her favor and against Thomas in the minimum amount of $330,300.00, plus interest from the date of each improper transfer at the maximum legal rate, costs, and expenses of this action including, without limitation, attorneys' fees, costs, and punitive damages, and granting any additional relief that is appropriate under the circumstances.

Respectfully Submitted,

Karen R. Goodman, not individually, but solely in her capacity as Chapter 7 Trustee for the estate of Freedom Development Group LLC – 87th Street., Plaintiff

By: /s/Scott R. Clar
     One of her attorneys

**Trustee's Counsel**:
Karen R. Goodman. (Atty. No. 1008242)
Scott R. Clar. (Atty. No. 06193741)
Crane, Simon, Clar & Goodman
135 S. LaSalle Street, Suite 3950
Chicago, IL 60603
312-641-6777
kgoodman@cranesimon.com
sclar@cranesimon.com

15